State ex rel Collins, Attorney-General, *v.* Standard Construction Co. et al.

[78 South. 625, In Banc.]

Appeal and Error. *Dismissal. Want of controversy.*

By chapter 112, Laws 1916, the approval of the plans and specifications, by which the interior of the old capital was to be overhauled, changed, and constructed, rested solely with the

Capital Commission; so that its approval of the plans and spec-
ifications by which the contractor was working, removes all
grounds for relief in a suit pending to énjoin such construc-
tion, and necessitates a dismissal of the plaintiff's appeal.

APPEAL from the chancery court of Hinds county.
HOH. O. B. TAYLOR, Chancellor.

Bill for injuction by the state of Mississippi on the
relation of Ross A. Collins, Attorney-General, against
the Standard Construction Company and others.
From a judgment desolving a temporary injunction and
dismissing the bill, complainant appeals.

This is an appeal from a decree dissolving an in-
junction and dismissing the bill of complaint exhibited
by the attorney-general against the Governor and the
state revenue agent as members of the Capitol Commis-
sion, Theo. C. Link, the supervising architect of, and
J. H. Semmes, doing business under the name of the
Standard Construction Company, who had contracted
with the commission to repair, the old capitol. The
other members of the Capitol Commission are the
secretary of state and the insurance commissioner. The
bill of complaint, omitting the caption thereof, is as
follows:

"Your complainant, state of Mississippi, on the rela-
tion of Ross A. Collins, Attorney-Generay, respectfully
shows that at the 1916 session of the legislature of
the state of Mississippi, chàpter 112 of the Laws of
1916, entitled, 'An act authorizing the Capitol Commis-
sion to repair the old capitol building and to change
its interior for state offices and relieve the congestion
of the overcrowded new capitol,' was duly enacted.
Said act placed the supervision of the work of res-
toration of the old capitol building in the Capitol Com-
mission composed of the Governor, the secretary of
state, the insurance commissioner, and the revenue
agent, which offices are held by Theo. G. Bilbo, J. W.

Power, T. M. Henry, and Stokes V. Robertson, respectively, and the said commission, by virtue of the authority given by the said act, employed Theo. C. Link, of St. Louis, Mo., for the purpose of preparing plans and specifications to repair the old capitol building.

"Complainant shows that by the terms of said act the said commission was directed to so repair and restore the old capitol and to change the interior thereof for the purpose of providing additional offices for the state officers, and thereby relieve the congestion of the overcrowded new capitol, and for the further purpose of affording a safe and adequate repository for a portion of our state records; and said act further provides that the interior of said old capitol building shall be reconstructed and the space made into rooms suitable for the state officers and for the preservation of state records.

"In accordance with the purpose of said act, the said Capitol Commission employed Theo. C. Link, of St. Louis, Mo., who, in the preparation of the plans and specifications having in mind the intention of the legislature, who had employed him to investigate and report on the feasibility of restoring the old capitol, and also having in mind the instructions of the said Capitol Commission, made and submitted plans, showing the second floor of said building for the Department of Archives and History and the Hall of Fame and repository for state records and suitable rooms for the preservation of state documents. Sheet No. 2 of series 1, 2, and 3 of said plans, revised August 21, 1916, is hereto attached and made Exhibit A to this bill. This series of sheets constitute the floor plans and drawings which the commission adopted and on which all work was done and all contracts let. Complainant further states that said sheet shows that the second floor is set apart for the use of the Department

of Archives and History and the preservation of state documents and the repositories of state records, reference being made to Exhibit A for more detailed averments as to the arrangement.

"Complaint further shows that the restoration of the old capitol and the arrangement of the second floor was an endeavor on the part of the Capitol Commission and the said architect to carry out the sentiment and impelling motive for the reconstruction of said old capitol by preserving it as an historical landmark; the exterior to be left as nearly as possible intact, and the interior to be arranged so as to afford a repository for such historical documents, relics, portraits, and manuscripts that mark the historical progress of Mississippi, both as a territory and as a state.

"On the ——— day of February, 1917, bids were asked for on the restoration if the old capitol work by A. S. Coody, secretary of the commission, said bids to be opened on February 23, 1917, a copy of said notice being hereto attached and marked 'Exhibit B' to this bill. On February 23, 1917, the Old Capitol Commission awarded a contract to the Standard Construction Company of Meridian, Miss., with J. H. Semmes, sole owner, for the sum of thirty thousand, one hundred and seven dollars and sixteen cents, to complete the work of restoration of the old capitol as provided in the plans and specifications, the floor plans being sheets Nos. 1, 2, and 3, dated August 21, 1916, heretofore filed as Exhibit A, and which were the plans by which all the work had heretofore been done both by convicts and contractors, and were the plans upon which the contracts to the Standard Construction Company was let. A copy of said contract between the Standard Construction Company and the Capitol Commission is hereto attached and marked 'Exhibit C' and made a part of this bill.

"Complainant further shows that the said contractor is now working on the second floor of said old capitol building, but is not doing the work on said second floor in accordance with the plans and drawings and specifications adopted by this commission and the one upon which the contract was let, reference being made to Exhibit A as to the requirements of the plans of the second floor of the said building, but is doing the work in an entirely different manner in the way of arrangement of space and partitions, walls, windows, doors, wiring, etc., in utter disregard of the plans adopted by the commission, and in violation of the provisions of said contract, with the result that the letter and spirit of chapter 112 of the Laws of 1916 cannot be carried out with reference to the location of the Department of Archives and History, the repositories for state records and the preservation of the documents and relics of Mississippi's history.

"Your complainant further shows that T. M. Henry and J. W. Power, two of the four members of the said Capitol Commission having in charge the restoration of this work, have requested the attorney-general, as the chief law officer of the state, to take the necessary legal steps to prevent an unlawful modification of the plans of the commission prepared in accordance with the intention of the legislature. Complainant also states, on information and belief, that Theo. G. Bilbo and Stokes V. Robertson, the two remaining members of the commission, and Theo. C. Link, architect, are directing the said contractor to do the restoration work on the said second floor not according to the plans adopted by the commission and upon which the contract was let, but in utter violation and disregard of an order of the Capitol Commission passed on the 20th day of April, 1917, in which the said contractor was notified to do no further work on partitions on the second floor of the old Capitol build-

ing until further notice, a copy of said order being hereto attached and marked "Exhibit D' to this bill.

"Complainant further shows that the said contractor and the architect were notified of this action by the secretary of the commission, and that Jos. W. Power and T. M. Henry, two of the members of the said Capitol Commission, stated to the said architect and the said contractor that, if they continued and persisted in the work in violation of the plans and specifications and drawings therefore adopted, they would vote against the allowance of any estimate to the contractor or commission to the architect.

"Complainant further shows to the court that the said contractor, acting under the advice and instructions of the said Theo. G. Bilbo and Stokes V. Robertson and Theo. C. Link in doing the work on an entirely different plan than that adopted by the commission, is thereby increasing the cost, violating his contract, disregarding the legislative enactment for restoration, is doing an irreparable damage to the state, and is creating a situation for which there is no adequate remedy at law.

"Complainant further shows unto the court that it is not the intention of the attorney-general's office, in complying with the request of two members of the Capitol Commission in taking legal steps to prevent further damage to the state, to retard in any degree this most laudable undertaking, but, on the contrary, the desire of this department is to hasten the conclusion of the work in accordance with the plans of the commission and the desire of the people of Mississippi, speaking through its legislature, by endeavoring to prevent the doing of the work in an entirely different manner than that contracted for by the commission and provided for by the legislature at an increased and unnecessary cost.

"Wherefore, the premises considered, complainant prays the court that a temporary injunction be issued,

restraining the Standard Construction Company and J. H. Semmes, sole owner thereof, and all its employees engaged in the work on the old capitol building, and Theo. G. Bilbo and Stokes V. Robertson, members of the Capitol Commission, and Theo. C. Link, architect, from taking any further steps or doing any further work on said second floor not in accord with the plans and drawings shown by Exhibit A to this bill, and that on final hearing of this cause that said temporary injunction may be made perpetual; and that all proper orders be entered and process issue for the abovenamed defendants, and that they be required to answer this bill of complaint, answer under oath being waived, returnable to the next term of the chancery court of the First district of Hinds county, Miss.

"And, as in duty bound, will ever pray, etc.

"Respectfully submitted.

"Ross A. Collins, Attorney General."

The resolution of the Capitol Commission, directing the contractor to cease work on the building, referred to in the bill of complaint as Exhibit D thereto, recites that:

On "motion by Mr. Henry, duly seconded by Mr. Power, that the contractor be notified to do no further work on partitions on the second floor of old capitol building, until further notice. Those voting aye: Mr. Henry (Insurance Commissioner) and Mr. Power (Secretary of State). Those voting no: Mr. Robertson (State Revenue Agent)."

A temporary injunction was granted in accordance with the prayer of the bill of complaint.

The answer of the defendants, among other things, sets forth that:

The "defendants answer further, and deny that the floor plans dated August 21, 1916, and marked 'Exhibit A' to complainants' bill were ever approved by said commission, and deny that any work has been

performed according to these plans and drawings, or any contract awarded to let based upon the floor plans filed as Exhibit A. to complainants' bill. But defendants ,charge and aver that the contract with the defendant J. H. Semmes was awarded by said Capitol Commission on the plans dated January 1, 1917, and the same are filed herewith and marked 'Exhibit (1)' to this bill, and that the said contract was awarded on the specifications filed herewith and marked 'Exhibit (2)' to this answer.

"Defendants further answer and deny that the legislature ever expressed an intent that the Department of Archives and History should be placed in the old capitol building, or that such words as 'the interior be arranged so as to afford a repository for such historical documents, relics, portraits and manuscripts that mark the historical progress of Mississippi, both as territory and a state,' are found in chapter 112 of the Laws of 1916, as charged in complainants' bill; but, on the other hand, the act says that 'the interior shall be reconstructed and the space made into suitable rooms, for offices of the state, and for repositories for such portions of the state records that the same may be preserved,' and that the intent of the legislative act as indicated by the title is to relieve the congestion of the overcrowded new capitol.

"Defendants answer further, and deny that the contract which was awarded to the Standard Construction Company was based upon the plans dated August 21, 1916, and filed as Exhibit A. by complainant, but defendants aver that the contract was awarded to the said Standard Construction Company on a set of plans and drawings entirely different, and which is filed herewith as Exhibit (1) as aforesaid, and the specifications as Exhibit (2).

"Defendants answer further, and deny that any work has been done by other contractors or by con-

victs in accordance with the plans filed by complainant as Exhibit A, or that said plans have ever been considered by the contractor, with reference to any actual construction.

"Defendants answer further, and deny that the work being done at the time this injunction was issued was being done in violation of the contract between the Capitol Commission and the Standard Construction Company, but aver that all work which has been done by the said company has been done in accordance with the plans and specifications embodied in the contract and made a part thereof and filed herewith as Exhibits (1) and (2).

"Defendants answer further, and deny that any work is being done, or has been done, in or on the old capitol building in violation of the provisions of chapter 112 of the Laws of 1916, or in violation of any contract, or of any valid order of the Capitol Commission or of the architect.

"Defendants answer further, and deny that the said Stokes V. Robertson and Theo. G. Bilbo, or either of them, have ever directed, or advised or requested any contractor to do any work in violation of any law or of any contract or any valid order of the commission, as charged by complainant, but have at all times insisted on all contracts being performed according to law and the provisions of the contract, and they aver that they have specially insisted that the Standard Construction Company carry on its work in strict accordance with the terms and conditions of its contract, as prepared by the instructions of the Capitol Commission and signed by all four members thereof, in the presence of witnesses."

The statute referred to in the bill of complaint as chapter 112, Laws of 1916, is as follows:

"Be it enacted by the legislature of the state of Mississippi, that the Capitol Commission be, and they are hereby authorized to preserve and repair the old

capitol building, and to overhaul, change, and so construct the interior so as to furnish suitable rooms and offices for some of the state officers, and for repositories for a portion of our state records.

"Sec. 2. That it shall be the duty of said commission, as soon as practicable, to employ a suitable architect to furnish plans and specifications to repair the old capitol building. That the exterior of the said building shall be preserved, but the interior shall be reconstructed and the space made into suitable rooms for offices of the state, and for . . . such portions of the state records that the same may be preserved.

"Sec. 3. That the commissioners may, at their discretion, employ a contractor who shall execute the work under the direction and supervision of said architect. and with the approval of said commission, and the architect and contractor so employed shall be paid out of the amount appropriated for this purpose. And upon the order of the Governor, the Auditor shall issue his warrant on the state treasurer for the same, and in like manner shall the material and labor be paid for, upon the recommendation of the architect. That the board of control of the penitentiary shall furnish the brick needed for such construction as far as possible and furnish convicts and teams to haul said brick, and also to furnish convicts and teams to do all such labor as they can properly perform, and the penitentiary shall receive credit for the same.

"And the total cost to the state of Mississippi of such work of preservation and repair, exclusive of convict labor and brick furnished by the penitentiary, shall not in any event exceed the sum of one hundred and twenty-five thousand dollars appropriated for this purpose.

"Sec. 4. That this act take effect and be in force from and after its passage.

"Approved April 8, 1916."

After the granting of the temporary injunction and before the final hearing, the secretary of state, one of the two commissioners on whose request this suit is alleged to have been begun, filed a motion, praying the court below "to dismiss said cause . . . and dissolve and revoke the writs of injunction issued therein," but the record discloses no ruling thereon. On the final hearing, at which considerable parol evidence was introduced by both sides, a decree was rendered, dissolving the injunction and dismissing the bill of complaint, from which decree this appeal is taken.

The chancellor declined to permit his decree to be superseded by the appeal, whereupon an application for a *supersedeas* was made to and refused by this court. When the cause came on to be heard by us in due course, appellees filed a motion to dismiss the appeal on the ground that no real controversy is now presented thereby because of the adoption by the Capitol Commission after the appeal was taken of the following resolution:

"Whereas, on November 10, 1916, this commission passed an order requiring all plans and specifications to be approved by the commission and signed by the commission and the architect before bids are invited; and whereas, the plans and specifications for the restoration of the old capitol building dated January 1, 1917, are a part of the contract of the Standard Construction Company, which contract has been signed by each member of this commission and approved by the architect, thereby carrying out the intent of said order of November 10, 1916; and whereas, this commission passed an order on April 20, 1917, directing the contractor, the Standard Construction Company, to do no further work on the second floor partitions until further notice; and whereas, it was intended that this order was to be in force and effect only and until the return of the Governor and a meeting of the commission could be had; and whereas, the commission desires to embody in its

records and minutes the true intent and purpose in the two orders referred to and in said contact and the plans and specifications forming a part thereof: Therefore, be it resolved, that the plans and specifications for the restoration of the old capitol building dated January 1, 1917, and made a part of the contract with the Standard Construction Company and attached as Exhibits Nos. 1, and 2 to defendants' answer in the case of *State of Mississippi ex rel. Ross A. Collins, Attorney-General v. Standard Construction Company et al.*, be and the same are hereby expressly approved, and also all work done in accordance with the same.

"Resolved, further, that the order of April 20, 1917, is hereby declared as being void from and after April 30, 1917, the date of a meeting of the Capitol Commission, and all work done by the said Standard Construction Company on the second floor partitions of the old capitol building, in occordance with the plans and specifications for the restoration of the old capitol building, dated January 1, 1917, and made a part of the contract with the said Standard Construction Company, is hereby ratified and expressly approved."

The minutes of the commission recite that:

"On the question of adoption of the resolution there were, yeas: Governor Bilbo, Mr. Power, Secretary of State, and Mr. Robertson, State Revenue Agent; nays: None."

Since the adoption of this resolution the repairs on the old capitol have apparently been completed for the offices therein, including those on the floor thereof here in controversy, are now occupied by state officers.

*Earl N. Floyd,* Assistant Attorney-General, for appellant.

*Clayton D. Potter* and *F. V. Brahan,* for appellees.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). By chapter 112, Laws of 1916, the approval of the plans and specifications, by which the interior of the old capitol was to be overhauled, changed, and constructed, rested solely with the Capitol Commission, so that its approval of the plans and specifications by which the contractor was working when this suit was begun removes all controversy relative thereto, and neither an affirmance nor a reversal of the decree of the court below will now serve any good purpose, from which it follows that appellees' motion to dismiss the appeal must be and is sustained. *McDaniel* v. *Hurt,* 92 Miss. 197, 41 So. 381; *Pafhausen* v. *State,* 94 Miss. 103, 47 So. 897; *State* v. *Jones,* 107 Miss. 462, 65 So. 511; *Whidden* v. *Broadus,* 108 Miss. 664, 67 So. 155; *Lockard* v. *Hoy,* 113 Miss. 238, 74 So. 137.

The dismissal of this appeal is, of course, without prejudice to any right which the Department of Archives and History may have to quarters in the old capitol; that question not being here involved.

*Sustained.*

ETHRIDGE, J. (dissenting).

I do not believe the motion to dismiss should be sustained. I do not think that the Capitol Commission, by any act it may have done after the institution of the litigation by the attorney-general, could preclude, by such act, the state from maintaining its bill. The bill alleges that the architect and the Capitol Commission had approved a certain plan and specification for the restoration of the old capitol, approved August 21, 1916, under which plan the Department of Archives and History was to have been located upon the second floor of the old capitol, and that this was done by the commission in recognition of the intention of the legislature to have the Department of Archives and History located in the old capitol which was being preserved, partially

for historical purposes, and that the contract for the work involved in this suit was let upon the plans and specifications made exhibit to the attorney-general's bill. It is also alleged that the contractor and two of the commissioners were proceeding not in accordance with the plans and specifications adopted, but according to a different set of plans and specifications and were doing the work in an entirely different manner in the way of arrangement of space, partitions, windows, wiring, etc., and in utter disregard of the plans adopted by the commission and in violation of the contract, and also in violation of the letter and spirit of chapter 112, Laws of 1916, and that the plans of the legislature cannot be carried out under the plans under which the work was being done. He alleged that the suit was brought on the relation of two of the four members of the Capitol Commission, and alleged that the other two members and the architect were directing the said contractor to do the restoration work of the second floor not according to plans adopted by the commission, and upon which the contract was let, but in utter disregard of an order of the Capitol Commission passed on the 20th day of April, 1917, in which the said contractor was notified to do no further work in partitions on the second floor of the building until further notice, and alleged that the contractor and the architect were notified of the action of the commission, and that they were notified that, if they persisted in the work in violation of the plans and specifications referred to, they would not allow the pay for the work. It further alleged that the method in which the work was being done increased the cost to the state, and was doing an irreparable damage and so creating a situation for which there was no adequate legal remedy. The bill then prays for an injunction from taking any further steps or doing any further work on the second floor not in accord with the plans and drawings shown by exhibit A to the bill, and prayed for a temporary and perpetual injunction. The

answer denied that the commission adopted the plans and specifications set forth in the attorney-general's bill, but contended that they adopted another set of p ans and specifications made exhibit to the answer under which they claim the contract was let, and by which the second floor of the old capitol was cut into offices other than for the Department of Archives and History. It appears from the record as a whole that no plans and no specifications were ever adopted by any formal order entered upon the minutes of the board. It appears from the testimony of the architect that he had drawn quite a number of different plans and specifications for the work, and sent them to the Capitol Commission, but it seems that none of them were ever formally adopted, and no order was entered upon the minutes. The notice to bidders, made exhibit B to the Attorney General's bill reads as follows:

"Notice to Bidders on Old Capitol Work. Bids on the restoration of the old state capitol will be opened by the commission February 23, 1917. Bids must be in the hands of the undersigned before that date.

"[Signed] A. S. Coody, Secretary."

This notice to bidders does not refer to any plans and specifications at all, and does not refer the bidder to any source from which any plans and specifications may be obtained by which the work was to be done. As there were no plans and specifications adopted by the Commission and none entered upon the minutes of the Commission, the bidders were left without a guide upon which to do the work, except such as he might obtain from the members of the Capitol Commission or the secretary. Inasmuch as several different plans and specifications had been filed with the secretary of the commission by the architect and none of them had been formally adopted, it is apparent that under the facts of this record the bidders may have been

referred to different plans and specifications by different members. It appears from the testimony that the plans and specifications referred to and made an exhibit in the attorney-general's bill were tentatively indorsed and accepted by the Capitol Commission, though not finally and completely adopted and not entered upon the minutes, on or about the 21st day of August, 1916. On the 10th day of November, 1916, the following motion was made and carried at a meeting of the Capitol Commission:

"Motion by Governor T. G. Bilbo, seconded by Mr. Robertson, that the architect, Theo. C. Link, be requested to furnish this commission for its approval complete plans and specifications for each particular contract in connection with the restoration of the old state capitol. The same to be agreed to and signed by the commission, and the architect and the contractor, and a copy of same so signed to be placed in the hands of the commission for its records and that hereafter such plans and specifications for each contract shall be approved by the commission and the architect as above stated before bids are invited."

It is manifest from this motion which was made and entered upon the minutes, and of which each bidder was charged with notice, that no contract could be validly made unless and until it had been approved and signed by a majority of the commission. When the contract was let a motion was made by T. M. Henry, one of the commissioners, and seconded by Mr. Power, another, that the bid of the Standard Construction Company be accepted according to the plans and specifications, which each of them understood to be the plans and specifications made exhibit to the bill of the attorney-general. Each of them testified that it was his desire and intention to have the Department of Archives and History located upon the second floor of the old capitol, and each understood that the bid was made with reference to the

plans drawn on August 21st, Exhibit A to bill, and on the application of these two members, who so understood the matter, this suit was filed, and the temporary injunction prayed for and obtained was to stop the work from being done upon any other plan from that contemplated in the exhibit to the attorney-general's bill. While it is true that the attorney-general alleged that the contract was let upon the exhibit to his bill, and while it is true that Mr. Henry and Mr. Power so understood at the time the contract was let, in fact, such plan had not been adopted, and there were in fact no legal plans and specifications adopted at all. This does not, however, prevent the attorney-general, who is the legal representative for the state, from suspending the work by a process of law until the requirements of the law are complied with; and, while under the temporary injunction the work could have proceeded, according to the plans made exhibit to the attorney-general's bill, it could not proceed on any other plan until the injunction was dissolved. The act (chapter 112, Laws of 1916) required the Capitol Commission to employ an architect to draw plans for the repair and preservation of the old capitol, and it is clear from a study of the provisions of the act set out in the statement of facts in the majority opinion that the commission had no right to proceed until it had adopted some plan and specification.

It is borne out in the testimony that the work being done under the plan made exhibit to the answer was costing the state more money than it would to carry out the plan made exhibit to the attorney-general's bill. This fact itself was sufficient consideration and sufficient interest on the part of the state to maintain the bill until the act had been complied with. At the time the decree was entered by the chancellor the Capitol Commission had voted to suspend the work until the Capitol Commission could agree upon some plan. The state had a right to protect the public

interest by stopping the work until the commission had proceeded according to the act, which it had not been doing at the time of the suing out of the injunction, and has not done even until this time. The Capitol Commission had no power and no right to make an unlawful contract; and when the attorney-general brought suit to test the legality of that contract, no change in the minutes after the work was done could be made so as to approve what the contractor had done. It may be that if the minutes had shown proper specifications, and if notice to bidders had referred to such specifications, and had given notice where they could be found and inspected, the state may have gotten a better bid than it did get. Certain it is that no bidder could tell from the minutes kept by the commission what particular plan or specification he would be called on to comply with, and said commission was equally divided as to which plan he must comply with in order to be paid; and this manifestly presented a situation that was not attractive to bidders, as no bidder would want to do the work and take chances on getting his pay without a lawsuit or of losing his pay altogether. This matter, again, is a matter of public importance and of the greatest interest to the state. Several departments of the government are vitally interested in the question, and the rule is that, notwithstanding the controversy may have been settled after litigation was entered, the court may proceed to determine it, where it is a matter of great public interest.

When we look to all of the law relating to public contracts by all bodies, we find from our statutes that it is contemplated that all such work be done on bids according to the plans and specifications, so that the public may have the benefit of the best bid that may be obtained. Under section 3930 of Hemingway's Code, section 4657, Code of 1906, the Capitol Commission has general jurisdiction and control of state

property in Jackson, not under the control of a board of trustees, which gives the Capitol Commission charge of the old capitol property. It is provided in this section that "work shall not be ordered done except by a majority vote of the said commission;" and, while this is somewhat confused under the act of 1916 (sections 3932 and 3933 of Hemingway's Code), it is apparent that both acts contemplate that, where a contract was let, it would be let according to the general law of the land. The board of public contracts of the state, by chapter 84 of Hemingway's Code, chapter 16 of the Code of 1906, Laws of 1912, chapter 205, is expressly required to see that contracts for supplying the state and furnishing the capitol are made to the best bidder, on notice. The same is true of the board of supervisors, all school trustees, and similar boards. The same is also contemplated and required by section 107 of the Constitution of the state. So that, construing Act of 1916, chapter 112, with the other statutes upon similar subjects as indicating a public policy, it is manifest that the contract with the Standard Construction Company was not properly made; and, inasmuch as the attorney-general prayed that he be enjoined from doing the work in any other way than according to plan made exhibit to his bill, and inasmuch as the proof clearly shows a state of things that entitle him to maintain this remedy, the question should be decided now; otherwise it becomes a precedent that may be followed by the greatest public mischief. Without imputing any improper motives to anybody, and assuming that all members of the Capitol Commission, as well as the contractors, were acting in the utmost good faith, this practice, if permitted, would result in the greatest injury and harm to the state. If the board can let a contract without identifying any specifications, and having several different sets on hand, it can always award a contract to a favorite; and if it were possible to

believe that high public officers would ever engage in
any graft scheme, it might be made a means of de-
frauding the state out of large sums of money by
the simple expedient of exhibiting one set of plans
to one bidder and another set to another bidder and
awarding •the contract according to plans and speci-
fications not marked and identified, and not of record,
so that they could be changed or altered after the
contract was let.

It appears from the testimony of Mr. Power that
after the suit originated he sought to withdraw the
suit because, in his opinion, a certain statute gave the
Governor power to locate the Department of Archives
and History, and that the Capitol Commission did not
possess this power. The attorney-general, the Depart-
ment of Archives and History, and the Insurance
Commissioner entertained a different view of the law,
and it appears that the secretary of state's action,
in making the motion or acquiescing in the motion
upon which the case is now dismissed out of court,
did so upon the apprehension that in no event could
the Department of Archives and History be placed
in the old capitol without legislative enactment. It
is manifest from his testimony that he would have
acted differently but for the belief that the Gover-
nor had this power. This question should be passed
upon by the court and the matter settled. The court
should also construe the act of 1916, and other laws,
and determine the question as to whether or not it
was the legislative intention to place the Department
of Archives and History in the old capitol. It ap-
pears that the legislature passed a bill at the recent
session, directing the Department of Archives and
History to be placed in the old capitol, but such bill
did not become a law because passed within the five
days preceding adjournment, and was not signed by
the Governor. This being true, it is not a law now,

and the court should proceed and construe the present statutes so that this question may be settled now.

It would be useless for me to express an opinion upon what the decision upon the merits should be, as to which view of the law is correct on the power of the Governor under the statute, and the power of the Capitol Commission to locate the Department of Archives and History, or on the question whether the law itself, recreating the old capitol, authorizes and requires the Department of Archives and History to be there placed. But I think the court should consider this case on the merits and not dismiss the case.

Stevens, J. (specially concurring).

The sole purpose of this injunction suit was to restrain the contractor and the members of the Capitol Commission from restoring the old capitol building according to any plans or drawings except those shown by Exhibit A to the bill, the prayer of the bill being that the defendants be enjoined "from taking any further steps or doing any further work on said second floor not in accordance with the plans and drawings shown by Exhibit A to this bill, and that on final hearing of said cause that said temporary injunction may be made perpetual." The chancellor upon final hearing dissolved this injunction, and it now appears that the work originally interrupted by this injunction has been fully done. The old capitol has been restored the building as reconstructed has been accepted by the Capitol Commission, the contractor paid and discharged, the various offices in the building have been assigned to state officials, and the building is now being used as a state house. The court will take judicial notice of the fact that the old capitol is now occupied by the various departments of our state government, and that the legislature has made appropriations for the operating expenses of the building. There is therefore nothing

which the court can now decide. How could this court now enjoin the prosecution of work which has been fully accomplished? How can this court now enjoin the contractor from rebuilding a structure which he has finally and completely rebuilt? As stated, there is nothing for the court to decide; this is a moot case, pure and simple. This court is too busy with live issues to waste time upon an unfortunate controversy that has already been ended. The case has been submitted both upon the motion to dismiss and upon the merits. It makes no difference whether we decide the case on the motion to dismiss or decide it upon the merits. There is no longer a live issue which the court can deal with and adjudicate. If we sustain the contentions of the attorney-general it is apparent that no relief could now be given under the prayer of his bill. It would be a foolish thing for the court to reverse this case with direction to enjoin the Standard Construction Company from proceeding with a contract which it has fully performed, or from restoring a building which it has completely restored. The contractor is no longer on the job and no longer interested in the present row. The bill, as originally conceived and framed, stated a case. In the filing and prosecution of this suit the attorney-general was originally supported by two of the four members of the Capitol Commission. It affirmatively appears, however, that after the filing of this suit one of the two members who, in the language of the bill, "requested the attorney-general, as the chief law officer of the state, to take the necessary legal steps to prevent the unlawful modification of the plans of the commission," withdrew his request that this suit be prosecuted, and on the contrary asked that the suit be dismissed, and thereafter joined with the other two commissioners in ratifying and confirming all work done by the contractor.

I cannot at all concur with the view entertained by my Brother Etheridge in his dissenting opinion that the Capitol Commission adopted no legal plans and specifica-

tions whatever. The proof shows that there was a set of plans for 'the second floor of the building, differing from the plans shown by Exhibit A to the bill, and that the work 'which has been done by the contractor was done and performed in accordance with written plans and specifications. The plans are referred to 'in the pleadings as Exhibit D. By these plans the 'second floor is cut up into suitable and appropriate 'offices for the different departments of government. . Not only were these plans, 'Exhibit D, in existence, but by resolution spread upon the minutes of the commission all work done in accordance with these 'plans has been fully ratified by a majority of the commission. It is perfectly manifest 'that plans of some kind were agreed upon. The fact that the building has been restored is sufficient evidence of this. The contractor 'could not have proceeded without some kind of plan. That he did proceed is sufficiently evidenced by the fact that the building is completed. What the contractor did has now been fully ratified by the Capitol Commission. This, in my judgment, legalizes all work that has been done. The original contract was let upon competitive bids and under the supervision of a competent architect. To my mind it is unthinkable that an architect of the highest integrity and unquestioned reputation would permit a state house to be rebuilt without any legal plans and specifications. But even if the facts were that no plans were formally adopted, the Capitol Commission could ratify the work done, and this ratification appears of record.

In dismissing the appeal I think the case should be dismissed without prejudice to any claim or right of the Department of Archives and History to be quartered in the old capitol. It is a matter of common knowledge of which the court will take 'notice that the movement for the restoration of the old capitol was 'largely initiated and fostered by the State Historical 'Department and the patriotic and cultured women of our 'state.

492 STATE EX REL. *v.* CONSTRUCTION Co. [Sup. Ct.

Opinion of the Court. [118 Miss.

The good women of the state appealed to our lawmakers to preserve the old capitol as one of the oldest historical buildings of the state and to provide that it should be used for historical purposes. The public policy of the state was reflected by the state Senate in 1912 when it went upon record as favoring the preservation of the old state house "as an historical building for the state of Mississippi" and "for historical and other purposes." I could not say that sentiment alone inspired the legislature in providing the necessary funds, but this, it must be conceded, was one of the controlling purposes. This is further evidenced by the statute which was passed by both houses of the legislature at its recent session, directing that offices in the old state house be assigned to the Department of Archives and History. This expression is not prompted by a desire or purpose to volunteer my personal views on a controversy between different departments of our government. What I have to say is pertinent to the sole issue that was made by the pleadings in this case. The bill charges that Mr. Link, the architect, devised a set of plans and drawings for the second floor of the building suitable for the State Historical Department that these plans were adopted by the commission, but that the contractor was doing the work according to different and illegal plans. It does appear that Mr. Link drew tentatively a set of plans for the second floor designed to accommodate the Historical Department, and to be suited to its needs, but the chancellor held that these plans were never legally adopted, and a majority of the Capitol Commission declined to order the work done according to these plans. I think the legislature has the supreme power to direct how the building should be used, and that nothing in this litigation should be held to impair the right of the legislature to place the Department of Archives and History in the old capitol. The building is state property, all state officials are servants of the state,

and the legislative department is supreme in its power to provide a state house and direct how and by whom it is to be used.